1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

DAVE VAN ELZEN and AUBREY MOORE, individually and on behalf of all other similarly situated,

11

NO. 3:16-CV-05759

12

Plaintiffs,

COMPLAINT – CLASS ACTION

13

TREND CAPITAL HOLDINGS, INC., a Delaware Corporation

FOR DAMAGES PURSUANT TO 47 U.S.C. §227. et seq. (TELEPHONE CONSUMER PROTECTION ACT), RCW 80.36.400 (AUTOMATIC DIALING AND ANNOUNCING STATUTE), RCW 19.86 (CONSUMER PROTECTION ACT), AND RCW 80.36.390 (TELEPHONE SOLICITATION)

14
15
16
17

JURY DEMAND

18
19
20

Plaintiffs Dave Van Elzen ("Van Elzen") and Aubrey Moore ("Moore") (collectively

21

"Plaintiffs"), by their undersigned attorneys, for this class action complaint against

22

Defendant Trend Capital Holdings Inc. ("Trend Capital"), allege as follows on their own

23

personal knowledge and on investigation conducted by their attorneys and, in support, state

24

and allege as follows:

25
26

## I.      NATURE OF THE ACTION

1.      Plaintiffs, individually and as a class representative for all similarly situated persons in the United States who have received automated text message calls to their cellular phones from an automatic telephone dialing system by Defendant or its agents, brings this action for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), the Washington Automatic Dialing and Announcing Device Statute ("WADAD"), the Washington Consumer Protection Act ("CPA"), specifically RCW 80.36.390 (telephone solicitations), and for invasion of privacy by intrusion against Trend Capital and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or related entities.

## II.     JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over Plaintiffs' TCPA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' TCPA claim arises under the laws of the United States, specifically 47 U.S.C. § 227 *et seq*. and its implementing regulations, 47 C.F.R. § 64.1200 *et seq*.

3.      This Court has personal jurisdiction over Trend Capital and venue is proper in this District because Defendant systematically and continuously conducts business in Washington State, maintains its principal place of business in Washington State, and a substantial part of the events giving rise to the claims asserted here occurred in this District.

## III.    PARTIES

4.      Plaintiff Van Elzen is a natural person and is domiciled in, and is a citizen of, the State of Wisconsin.

5.      Plaintiff Moore is a natural person and is domiciled in, and is a citizen of, the State of Minnesota.

6.      Defendant Trend Capital is a corporation incorporated and existing under the

COMPLAINT – CLASS ACTION FOR DAMAGES PURSUANT TO 47
U.S.C. §227, RCW 80.36.400, RCW 80.36.390 – Page 2

**THATCHER, PLLC**
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

laws of the State of Delaware whose primary corporate headquarters is located at 13115 NE 4th Street, Suite 110, Vancouver, Washington 98684. Trend Capital does business throughout the United States, including in the State of Washington and this District.

## IV.    THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

7.    In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in response to a growing number of consumer complaints regarding certain annoying and harassing telemarketing practices.

8.    The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

9.    According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with the authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that many wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

10.    The WADAD is based on the federal TCPA statute, and the federal analysis of TCPA provides guidance for interpreting WADAD.

## V.    FACTUAL ALLEGATIONS

### A.    **Bulk SMS Marketing**

11.    In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

12.    Bulk text messaging, or SMS marketing, has emerged as a new and direct

COMPLAINT – CLASS ACTION FOR DAMAGES PURSUANT TO 47
U.S.C. §227, RCW 80.36.400, RCW 80.36.390 – Page 3

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

method of communicating and soliciting consumer business. The term "Short Message Service," or "SMS," is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

13.     When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.     Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

14.     Trend Capital is a list management and lead generation company, operating in a variety of markets, including payday lending.

15.     Trend Capital offers several different products for affiliate marketing, including lead generation, pay-per-click advertising, and a text-messaging platform.

16.     Trend Capital's text messaging platform is known as "Vatimo" and is described by Defendant as having a "vast scale of messaging capability, high deliverability, and detailed reporting."[1]

17.     Trend Capital directly, or at the direction of its clients, sends text messages to consumer's cellular phones.

18.     In sending these text messages, Defendant took no steps to acquire the oral or written prior express consent of Plaintiffs or other cellphone users who received the unsolicited text messages.

---

[1] http://trendcapital.com/projects

COMPLAINT – CLASS ACTION FOR DAMAGES PURSUANT TO 47 U.S.C. §227, RCW 80.36.400, RCW 80.36.390 – Page 4

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

19.     Defendant made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

20.     In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent(s)) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

21.     Defendant was and is aware that these above described text messages were and are being made without the prior express consent of the text message recipients.

**C.     Defendant Transmits Text Messages to Consumers Who Have Expressly Opted-Out**

22.     Defendant also sends unauthorized SMS text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages. Even if any prior consent existed, Defendant is required to honor each stop-request as a termination of any prior consent. Accordingly, any SMS text message (other than a final one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express stop request is done without prior express consent.

23.     To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

24.     According to the MMA's October 2012 U.S. Consumer Best Practices for

COMPLAINT – CLASS ACTION FOR DAMAGES PURSUANT TO 47
U.S.C. §227, RCW 80.36.400, RCW 80.36.390 – Page 5

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

Messaging, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

25.     CTIA[2] similarly advises that "[s]hortcode programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT . . . and, if the user is subscribed, by opting the user out of the program." Further, "[r]ecurring programs must promote opt-out instructions at regular intervals in content or service messages, at least once per month," and "[u]sers must be able to opt out at any time." *See* CTIA Compliance Assurance Solution Mobile Commerce Compliance Handbook, Version 1.2, effective August 1, 2013.

26.     The FCC has similarly ruled that consumers have the ability to revoke their consent. Yet Defendant ignores these rules and accepted industry guidelines. Instead, Defendant makes it difficult for consumers to opt-out or unsubscribe to its SMS text messages by failing to timely honor such requests.

27.     Despite receiving numerous express stop requests from cellular subscribers, including Plaintiff Moore, Defendant Trend Capital continues to send automated text messages to these subscribers, sometimes for months afterwards.

28.     Defendant knows, or is reckless in not knowing, that its SMS text messages to these cellular subscribers are unauthorized. Reply message STOP requests are, by design,

---

[2] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

sent to Defendant's number, thereby directly informing Defendant that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

**D.     Websites Owned and Controlled by Defendant Trend Capital Holdings**

29.     On information and belief, Defendant Trend Capital Holdings sends or has sent on its behalf through its affiliates, unsolicited text messages to consumers directing such consumers to complete payday loan applications on websites Defendant or its affiliates own or control such as Loanup1.com, Dev-Yosto.com, and IncLoans.com.

30.     IncLoans.com is privately registered to hide the owner's identity presumably since the website is used to engage in unsolicited telemarketing that violates the Telephone Consumer Protection Act.

31.     Dev-Yosto.com is an identical website to IncLoans.com, with the exact same homepage, images, links, including all of the exact same text on each page, and the ability to submit a payday loan 'application' through both websites.

32.     On information and belief, Dev-Yosto.com stands for development site for the Yosto company. The whois registration for Dev-Yosto.com reveals that the website is registered to Denis Goncharov whose email is denis@yosto.com.

33.     Yosto was located in Vancouver, WA and engaged in affiliate marketing within the payday loan industry.[3]

34.     Yosto has since been dissolved according to its corporate records in Delaware. Many of the principals of Yosto reformed to create Trend Capital Holdings, Inc. For instance, Vlad Nester, the former CEO of Yosto, is now the CEO of Trend Capital Holdings, Inc.[4]

---

[3] *See* https://www.facebook.com/Yostocom ("Many of our affiliates in payday US noticed that it's became [*sic*] harder to generate Payday US traffic within the last two weeks. Is there something wrong?")

[4] https://www.linkedin.com/in/vlad-nester-4b284867

35.     Trend Capital was formed in August 17, 2015 in Vancouver, Washington and is responsible for the loans-soliciting website Incloans.com. Trend Capital markets itself as a "leader in list management and lead generation. We offer high-conversion landing pages and generate a large volume of traffic. Our revolutionary platform allows us to run effective profitable campaigns."[5] One of the platforms that Trend Capital runs is Vatimo, which it describes as "a unique and reliable SMS messaging and call tracking platform…it's vast scale of messaging capability, high deliverability, and detailed reporting makes Vatimo an effective and highly utilized platform."[6]

36.     Loanup1.com, which is a site also promoted by or on behalf of Defendant Trend Capital, is also owned or controlled by Defendant Trend Capital.

37.     Loanup.com was a site marketed by Yosto, the precursor company to Defendant Trend Capital. Yosto claimed, when promoting to affiliates who will drive traffic to its site, that "You can send traffic to the exclusive landing pages available through our network.  The conversion rate on our promo sites can reach up to 60%."[7] The posting goes on to describe loanup.com and includes an image of the site, which is a replica of the site of Loanup1.com.

38.     Yosto last updated its affiliate offer promoting Loanup.com as recently as August 1, 2016 according to Odigger.com, a website forum that helps companies advertise and find affiliate offers. Yosto offered $185 for each affiliate that sent a lead through Loanup.com.

---

[5] https://www.linkedin.com/company/trend-capital-holdings-inc

[6] http://trendcapital.com/projects

[7] http://www.warriorforum.com/affiliate-program-database/858716-yost-advanced-affiliate-network-up-155-per-lead-weekly-payments.html

39.     The site Loanup.com, as of March 15, 2015,[8] and the current Loanup1.com website are mirror websites of one another sharing the same design and text.

40.     Unfortunately for Plaintiffs and other members of the Classes, Defendant send out text messages to consumers who have not consented to receive them.

41.     By making the text message calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiffs' and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

**E.      Plaintiff Van Elzen's Experience with Defendant**

42.     On June 10, 2011, Plaintiff Van Elzen registered his cellular phone number on the National Do Not Call registry, a list that all telemarketers must adhere to, to avoid unsolicited calls and text messages. Beginning in May 2016, Plaintiff Van Elzen began to receive unsolicited text messages on his cell phone from a variety of phone numbers. The telemarketer was texting him in order to solicit Plaintiff Van Elzen to apply for a so-called payday loan.

43.     Plaintiff Van Elzen received the first text message from Defendant on May 23, 2016 from 304-370-6092 and the link in the text message lead Plaintiff to http://incloans.com.

---

[8] http://web.archive.org/web/20150315012440/https://loanup.com/

**THATCHER, PLLC**
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

44.     Plaintiff Van Elzen received a second text message from Defendant on June 1, 2016 stating, "Due to changes we approve you now for sure and full advance http://bit.ly/1WuSNqX." A hyperlink in that text message also lead Plaintiff to http://incloans.com.

45.     Plaintiff Van Elzen received a third text message from Defendant on June 2, 2016 stating, "Morning Excited you can be finalized for advance last step right away go http://1oos.net/w416 /Text stop to 2133547369." The hyperlink in that text message also lead to http://incloans.com.

46.     Plaintiff Van Elzen received a fourth text message from Defendant on June 20, 2016 stating, "Latest News Excited you can be ap.proved for advance last step now go http://1sso.net/w2119 /Text stop to 2133547369." The hyperlink in that text message also lead to http://incloans.com.

47.     Plaintiff Van Elzen received a fifth text message from Defendant on June 24, 2016 stating, "We approve you now for sure advance http://bit.ly/293R4Uy." The hyperlink in that text message also lead to http://incloans.com.

48.     At no time did Plaintiff Van Elzen consent to the receipt of text message calls from Defendant, let alone provide prior oral or written express consent to Defendant.

49.     Plaintiff Van Elzen received unsolicited telemarketing text messages on behalf of Trend Capital Holdings, Inc. and its affiliates for 2 months.

50.     Plaintiff Van Elzen received a total of 5 unsolicited text messages from Defendant, each of which attempted to telemarket a payday loan.

51.     By making unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm, including aggravation and annoyance and interference with the use and enjoyment of their cellphones. In the present case, a consumer could be subjected to many unsolicited text messages as the Defendant does not provide instructions or a

mechanism for opting out.

52.     Unfortunately for Plaintiffs and other members of the Classes, Defendant send out text messages to consumers who have not consented to receive them.

53.     To redress these concrete and particularized harms, Plaintiff Van Elzen, on behalf of himself and a class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

54.     On behalf of the Classes, Plaintiff Van Elzen seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**F.     Plaintiff Moore's Experience with Defendant**

55.     On November 6, 2012 Plaintiff Moore registered her cellular phone number on the National Do Not Call registry to avoid unsolicited calls from telemarketers. Beginning in approximately January 2016, Plaintiff Moore began to receive unsolicited text messages on her cell phone from a variety of phone numbers. The telemarketer was texting her in order to solicit Plaintiff Moore to apply for a so-called payday loan.

56.     Plaintiff Moore received the first text message on her new phone from Defendant on May 2, 2016 at 12:57 PM stating, "You are now eligible to request more funds – up to 1K. Login at http://bit.ly/1rr6bza. Reply STOP to Quit." The text was sent by 302-549-4377 and the link in the text message leads to http://incloans.com when it is clicked. Plaintiff Moore replied "STOP" to put an end to the text messages, but she received no confirmation of her opt-out.

57.     Despite her opt-out request, Plaintiff Moore received a second text message on her new phone from Defendant on May 16, 2016 at 1:18 PM stating, "More funds available. Login http://bit.ly/1WAaQw5 to request. Txt CANCEL to QUIT." The text was

sent by 423-617-0377 and the link in the text message leads to http://incloans.com when it is clicked.

58.     Plaintiff Moore received a third text message on her new phone from Defendant on May 23, 2016 at 11:27 AM stating, "Your account is active. You may login and apply for funds http://bit.ly/27PnoDb Txt CANCEL to STOP." The text was sent by 423-617-0729 and the link in the text message leads to http://touchpointloans.com. Plaintiff Moore replied "Cancel" in an effort to opt-out of the text messages.

59.     Despite her second opt-out request, Plaintiff Moore received a fourth text message on her phone from Defendant on May 31, 2016 at 12:34 PM stating, "You are eligible to apply for funds by completing a quick and simple form online. Submit your request today http://bit.ly/1WWhmwL. Reply CANCEL to CANCEL." The text was sent by 530-447-0451 and the link in the text message leads to http://touchpointloans.com when clicked.

60.     Plaintiff Moore received a fifth text message on her new phone from Defendant on July 18, 2016 at 12:08 PM stating, "Submit an application for additional funds. The form is located in your account at http://loanpct.co/4a4ee. Reply STOP to CANCEL." The text was sent from phone number 844-238-7071 and the link in the text message leads to https://loanspockets.com/ when clicked. Plaintiff Moore replied Stop to cancel as instructed. This time she received an opt-out confirmation.

61.     Loanspockets.com is a replica of the site Loanup1.com controlled by Defendant Trend Capital Holdings.

62.     Yosto advertised leads to LoanPocket.com via the affiliate network on Odigger.com.[9]

---

[9] http://odigger.com/affiliate-offer/loanpocket-com-payday-loans-usa/

63.     Touchpointloans.com is a replica of Loanup1.com.

64.     At no time did Plaintiff Moore give prior express consent to the receipt of text message calls from Defendant, let alone provide prior oral or written express consent to Defendant.

65.     Plaintiff Moore received unsolicited telemarketing text messages on behalf of Trend Capital Holdings, Inc. and its affiliates for 6 months.

66.     Plaintiff Moore received a total of at least 5 unsolicited text messages, all relating to obtaining a payday loan.

67.     By making unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited text messages and interference with the use and enjoyment of their cellphones.

68.     To redress these injuries, Plaintiff Moore, on behalf of herself and a class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

69.     On behalf of the Classes, Plaintiff Moore seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## VI.     CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated ("Class Members").

71.     Class Definition. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action as a class action on behalf of the Class of persons defined as follows:

**Autodialed No Consent Class**: All persons in the United States who in the four years preceding this Complaint up to the date notice is disseminated to the Class: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) to the person's cellular telephone number, and (3) for

whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to send automated text messages to Plaintiffs.

**DNC No Consent Class**: All persons in the United States who in the four years preceding this Complaint up to the date notice is disseminated to the Class (1) Defendant (or a third person acting on behalf of Defendant) made a text message call on his/her cellphone, (2) more than one time within any 12-month period, (3) where the cellphone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling Defendant's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

**Replied Stop Class**: All persons in the United States who from the last four years to the present (1) received on their cellphone at least one text message from Defendant (or a third person acting on behalf of Defendant) promoting a business or service, (2) replied to the text message with an instruction for Defendant to no longer send messages using the terms STOP, CANCEL, END or similar terms, and (3) who thereafter received at least one additional text message to their same cellphone number beyond a message simply confirming the opt out, and (4) who did not reauthorize Defendant to send them text messages after they opted out.

72.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate the need to amend the Class Definition following class discovery, including discovery revealing the manner by which Defendant claims it obtained prior express consent to send text messages to the Plaintiffs.

73.    **Numerosity**: The exact number of members within the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has sent text messages to hundreds or thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

74.    **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct. Plaintiffs are members of the Classes defined herein, and if Plaintiffs are able to recover for the claims set forth in this Complaint then the other Class Members will have a right to recover as well.

75.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiffs have no conflicts with or interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

76.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct constitutes a violation of the TCPA;

(b)    Whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c)    Whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

COMPLAINT – CLASS ACTION FOR DAMAGES PURSUANT TO 47
U.S.C. §227, RCW 80.36.400, RCW 80.36.390 – Page 15

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

(d)     Whether Defendant obtained prior express written consent to contact any class members;

(e)     Whether Defendant sent text messages to persons who had replied STOP, END, CANCEL, or with similar terms;

(f)     Whether Defendant sent multiple text messages to cellphone users whose numbers were registered on the Do Not Call list;

(g)     Whether Trend Capital's messages constitute telemarketing or were dual purpose messages, and

(h)     To the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

77.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Van Elzen and Moore and the Autodialed No Consent Class)**

78.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

79.     Defendant and/or its agent(s) transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiffs and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent(s), which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

80.     These text calls were made *en masse* and without the prior express written or oral consent of the Plaintiffs and the other members of the Autodialed No Consent Class to receive such wireless spam.

81.     To the extent written prior express consent was required, Defendant failed to obtain prior express written consent that disclosed to the consumer that agreeing to receive text messages was not a condition of purchase or use of any goods or service or that the consumer was agreeing to receive calls with the use of an ATDS or similar technology.

82.     To the extent Defendant's agent(s) sent the text messages at issue, Defendant's agent acted with actual or apparent authority and/or in accordance with a contract between Defendant and its agent(s). Defendant's agents acted under Defendant's control and for Defendant's benefit and/or with Defendant's knowledge and approval. Defendant controlled its agents and knew about, and received the benefits of, the agent's text

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

messaging activities. Defendant ratified the agent's conduct with respect to the transmission of such text messages.

83.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiffs and the other members of the Autodialed No Consent Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

84.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Van Elzen and Moore and the DNC No Consent Class)**

85.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

86.     Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiffs Van Elzen and Moore and the other members of the DNC No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

87.     These text calls were made *en masse* and without the prior express consent of the Plaintiffs Van Elzen and Moore and the other members of the DNC No Consent Class to

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

receive such wireless spam.

88.     Plaintiffs and the Class Members had registered their telephone numbers on the Do Not Call registry for at least 30 days yet each received more than one text message advertisement within a 12-month period from or on behalf of Defendant.

89.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiffs Van Elzen and Moore and the other members of the DNC No Consent Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

90.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs Van Elzen and Moore and the other members of the DNC No Consent Class.

### THIRD CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Moore and the Replied Stop Class)

91.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

92.     Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff Moore and the other members of the Replied Stop Class using equipment that, on information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

93.     The telephone dialing equipment utilized by Defendant and/or their agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed

COMPLAINT – CLASS ACTION FOR DAMAGES PURSUANT TO 47
U.S.C. §227, RCW 80.36.400, RCW 80.36.390 – Page 19

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

numbers form a database of telephone numbers, in an automatic and systematic manner.

94. These text calls were made *en masse* and without the consent of the Plaintiff Moore and the other members of the Replied Stop Class to receive such wireless spam. Indeed, any prior express consent had been revoked by each class member since they each had responded with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "OPT OUT," "END," "CANCEL," or similar terms.

95. The text messages to Plaintiff Moore and the Replied Stop Class were made after any consent had been expressly revoked by responding with an opt-out request, such as "STOP." This alone violates the TCPA.

96. Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

97. As a result of such conduct, Plaintiff Moore and the other members of the Replied Stop Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

98. Additionally, because the text messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendant was to temporarily place them on hold.

### FOURTH CAUSE OF ACTION
### (Violations of Washington Automatic Dialing and Announcing Device Statute, RCW 80.36.400)

98. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

99. At all times material hereto, Defendant used an automatic dialing and announcing device ("ADAD") as defined in RCW 80.36.400(1)(a).

100. Defendant sent the text messages, which were commercial solicitations made for the purpose of encouraging Plaintiffs and the Class Members to purchase Defendants goods and services, namely its payday loans, from Washington State.

**FIFTH CAUSE OF ACTION**
**(Violation of the Washington Consumer Protection Act, RCW 19.86)**

101.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

102.    Under RCW 80.36.400(3), Defendant's violation of RCW 80.36.400 constitutes a violation of the Washington State Consumer Protection Act, RCW 19.86, *et seq.*

103.    The text messages themselves, or the decision to transmit them, were made in and/or emanated from Washington State.

104.    As a direct result of Defendant's conduct, Plaintiffs and Class members suffered damages in an amount to be proven at trial, and is additionally entitled to treble damages, civil penalties, and costs and attorneys' fees as provided by RCW 19.86.

**SIXTH CAUSE OF ACTION**
**(Invasion of Privacy by Intrusion under Washington Law)**

105.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

106.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of invasion of privacy by intrusion into Class members' solitude, seclusion, or private affairs under Washington law.

107.    As a direct result of Defendant's intrusions of privacy, Plaintiffs and members of the Class are each entitled to damages for each and every invasion of privacy by intrusion.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial.

**THATCHER, PLLC**
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs Dave Van Elzen and Aubrey Moore, on behalf of themselves and the classes, pray for the following relief:

1. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiffs Van Elzen and Moore as the representatives of the Classes and appointing their attorneys' as Class Counsel;

2. An award of actual and statutory damages to be placed in a common fund for the benefit of the Class Members;

3. An injunction requiring Defendant to cease all wireless spam activities, and otherwise protecting the interests of the Class;

4. A declaration that Defendant used an ATDS under the TCPA and failed to honor opt out requests;

5. An award of reasonable attorneys' fees and costs from the common fund; and

6. Such further and other relief the Court deems reasonable and just.


DATED this 9th day of September, 2016.

THATCHER, PLLC

By: s/ Gregory P. Thatcher
Gregory P. Thatcher, WSBA No. 40902
600 First Avenue, Suite 324
Seattle, WA 98104
Telephone: (206) 624-1222
Email: gthatcher@thatcherpc.com


Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300

Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman
(Law@stefancoleman.com)*
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Tel: (877) 333-9427
Fax: (888) 498-8946

*Counsel for Plaintiffs and the Putative Class*

**pro hac vice** admission to be filed

COMPLAINT – CLASS ACTION FOR DAMAGES PURSUANT TO 47
U.S.C. §227, RCW 80.36.400, RCW 80.36.390 – Page 23

THATCHER, PLLC
600 FIRST AVENUE, SUITE 324
SEATTLE, WA  98104
206.624.1222